UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEANGELO BENNETT,

    Petitioner,

v.                                                      Case No. 10-14394

CINDI CURTAIN,

    Respondent.
                                          /

**OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS AND DENYING A CERTIFICATE OF APPEALABILITY**

Michigan prisoner DeAngelo Bennett ("Petitioner") has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 asserting that he is being held in violation of his constitutional rights. Petitioner was convicted of armed robbery, Mich. Comp. Laws § 750.529; first-degree home invasion, Mich. Comp. Laws § 750.110a(2); felon in possession of a firearm, Mich. Comp. Laws § 750.224f; larceny in a building, Mich. Comp. Laws § 750.360; three counts of felonious assault, Mich. Comp. Laws § 750.82; and possession of a firearm during the commission of a felony, Mich. Comp. Laws § 750.227b, following a jury trial in the Wayne County Circuit Court. He was sentenced as a second-offense habitual offender, Mich. Comp. Laws § 769.10, to concurrent terms of twenty-five to forty years imprisonment on the armed robbery conviction, ten to twenty years imprisonment on the home invasion conviction, one to five years imprisonment on the felon in possession conviction, one to four years imprisonment on each of the larceny and felonious assault convictions, and a consecutive term of two years imprisonment on the felony firearm conviction in 2008.

In his pleadings, he raises claims concerning the sufficiency of the evidence, the validity of his sentence, and appellate counsel's refusal to provide him with transcripts on direct appeal. Respondent has filed an answer to the petition contending that it should be denied. For the reasons stated, the court concludes that Petitioner's claims lack merit and the petition must be denied. The court also concludes that a certificate of appealability must be denied.

## I. FACTS AND PROCEDURAL HISTORY

Petitioner's convictions arise from an assaultive incident that occurred in Detroit, Michigan on October 12, 2007. The court adopts the statement of facts set forth by the Michigan Court of Appeals, which are presumed correct on habeas review. *See* 28 U.S.C. § 2254(e)(1); *Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009). Those facts are as follows:

> Defendant's convictions arose out of a midnight assault against Denard Williams and his family. At about midnight on October 12, 2007, Denard drove home from his job at Pizza Hut. He parked under a streetlight and got out of his car, carrying pizza. His wife Sharon Williams was waiting for him in the front room. Their three young children were in the home as well. The youngest child, four-year old Denard Williams Jr. (hereafter "Junior"), was awake, and another child was asleep on the couch. Denard placed a container of soda on top of his car, and called to Sharon to help him by carrying in the soda. As Sharon approached the car, a man placed her in a chokehold and put a pistol to her neck. The lower part of the man's face was covered with a loose shirt. The man then walked backward, taking Sharon toward the house.
>
> Defendant appeared from behind a tree, holding an assault rifle, and approached Denard. He came within three feet of Denard and placed the barrel of the rifle within two inches of Denard's face. Although defendant's face was partially covered, Denard saw some of his face and his eyes, and Sharon noticed that he was wearing a style of jeans that she referred to as "Neyce," FN1 which had distinctive stitching on the back pocket. Defendant told Denard to move, and placed the rifle on Denard's back. With the rifle touching his back, Denard walked to his front door where the other man was

still holding Sharon. The men told Denard and Sharon to go into the house. Concerned for the safety of his children, Denard did not want to go inside the house. Defendant pushed Denard backward into the house, and Denard saw defendant's face when whatever was covering it fell down past his lips.

FN1. "Neyce" is a phonetic spelling of Sharon's testimony. Sharon identified Neyce jeans as "a designer who design[s] this kind of jeans with the flip flop stitches." Enyce is a clothing company.

Once they were inside, the two men put Denard and Sharon on the floor, facing the couch, with their heads down. A third man entered the house. At gunpoint, the assailants ordered Denard to get up and led him out of the room. The assailants demanded money, and Denard removed $400 from his pocket, which he was instructed to drop onto the floor. The men asked Denard where his "chopper" was located, which Denard understood to mean his assault rifle. Denard told them where the rifle was, and defendant walked Denard into the hallway and instructed him to lie down. Defendant held the rifle to Denard's head and continued to demand money. The assailants also asked him where his "weed plant" FN2 was located. Denard responded that there were none in the house. Denard had previously kept a marijuana plant upstairs, but the plant had died.

FN2. The record is unclear as to whether the assailants asked about a "weed plant" or "weed plants."

One of the men ran upstairs, and shortly thereafter defendant called up to him, "come on, come on, cousin." The man came back downstairs, and said "give me the money, I'm not playing." Denard heard the cocking of a gun, and turned over his wallet, which contained approximately $150.

Defendant went to the front room and touched the rifle to Junior's stomach. He asked Sharon and then Junior where the money was, and Junior began to cry. Denard heard running and he started to get up. One of the men said, "I'm still here, don't get up." Denard returned to the floor. About five minutes later, Denard got up and went to the front room; Sharon and Junior were in the same place they had been. Denard called the police.

Detroit Police Investigator Philip Wassenaar, among others, responded to the call. Officer Wassenaar testified that Sharon, who appeared traumatized, tried to describe the events. She described the first man who pointed a pistol at her, indicating she thought she recognized him from down the street. Officer Wassenaar testified that Sharon described the distinctive stitching on the second man's jeans and noted that he had "craters" in his face. FN3 Sharon testified, however, that it was the first assailant-the one who had pulled a pistol on her-that had the "craters" in his face. Sharon also testified

3

that the man in the Neyce jeans was armed with an assault rifle. Officer Wassenaar recounted that she said this man was armed with a pistol. Sharon testified that she believed "the investigator probably mixed up my descriptions." Denard described the assailants and told the police he thought they might be men he regularly saw outside down the street when he arrived home from work every night.

FN3. Sharon described "craters" as the remnants of blackheads.

The police arrested defendant and another man at a house down the street from the Williams' house. When arrested, defendant had $160 in cash and the other man had $423 in cash. About two days after the incident, the police called Denard at work and asked him to view a lineup of six men. Within a minute of viewing the lineup, Denard identified defendant. FN4 Denard stated, "I know it's him, I know his face, his nose and his complexion."

FN4. Sergeant Charles Rogers, who observed the line-up, testified that Denard identified defendant in less than ten seconds, at which time Sergeant Rogers told him to take his time and look at all six people in the line-up. Denard took additional time, and again identified defendant.

*People v. Bennett*, No. 284887, 2009 WL 3837172, *1–2 (Mich. Ct. App. Nov. 17, 2009).

Following his convictions and sentencing, Petitioner filed an appeal of right with the Michigan Court of Appeals raising the same claims presented on habeas review. The court denied relief on those claims and affirmed his convictions. *Id.* Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was denied in a standard order. *People v. Bennett*, 486 Mich. 902 (2010).

Petitioner thereafter filed his federal habeas petition raising the following claims:

I. Verdicts of guilty based upon insufficient evidence constituted a denial of due process.

II. Sentences imposed violated constitutional guarantees against cruel and unusual punishment.

III. He was denied due process under the federal and state constitutions when the trial sentenced him under an erroneous sentencing guideline range because of an error in assessment of 25 points under Offense Variable 13 for crimes against a person.

4

    IV.    He was denied equal protection and due process under the federal and state constitutions when appellate counsel refused to provide him with access to the trial transcripts which he sought to utilize in the filing of a supplemental brief under Michigan Supreme Court Administrative Order 2004-6 (Standard #4).

Respondent has filed an answer to the petition contending that it should be denied because the claims are not cognizable and lack merit.

## II. STANDARD OF REVIEW

Federal law imposes the following standard of review for habeas cases challenging state court convictions:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [United States Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15–16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal

habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. The state court's decision must have been more than incorrect or erroneous. It must have been "objectively unreasonable." *Wiggins*, 539 U.S. at 520–21 (citations omitted); *see also Williams*, 529 U.S. at 409. The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett,* _ U.S. _, 130 S. Ct. 1855, 1862 (2010) (quoting *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam); *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997)).

The United States Supreme Court has held that "a state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, _ U.S. _, 131 S. Ct. 770, 786 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003). Pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* Thus, in order to obtain habeas relief in federal court, a state prisoner must show that the state court's rejection of his claim "was so

lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams*, 529 U.S. at 412; *see also Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) (noting that the Supreme Court "has held on numerous occasions that it is not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this Court'") (quoting *Wright v. Van Patten*, 552 U.S. 120, 125–26 (2008) (per curiam)); *Lockyer*, 538 U.S. at 71–72. Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington*, 131 S. Ct. at 785. Furthermore, it "does not require citation of [Supreme Court] cases—indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell v. Esparza*, 540 U.S. 12, 16 (2003) (per curiam). While the requirements of "clearly established law" are to be determined by Supreme Court precedent, the decisions of lower federal courts may be useful in assessing the reasonableness of the state court's ruling. *See Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox,* 340 F.3d 667, 671 (8th Cir. 2003)); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002).

A state court's factual determinations are presumed correct on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption only with

clear and convincing evidence. *See Warren v. Smith*, 161 F.3d 358, 360–61 (6th Cir. 1998). Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, _ U.S. _, 131 S. Ct. 1388, 1398 (2011).

### III. ANALYSIS

#### A. Sufficiency of the Evidence Claim

Petitioner first asserts that he is entitled to habeas relief because the prosecution failed to present sufficient evidence of guilt to sustain his convictions. Specifically, Petitioner claims that the prosecution did not establish his identity—that he was one of the perpetrators of the crime.

The federal due process clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). The question on a sufficiency of the evidence claim is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). A federal habeas court views this standard through the framework of 28 U.S.C. § 2254(d). *Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002). Thus, under the AEDPA, challenges to the sufficiency of the evidence "must survive two layers of deference to groups who might view facts differently" than a reviewing court on habeas review—the factfinder at trial and the state court on appellate review—as long as those determinations are reasonable. *See Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). Furthermore, the *Jackson* standard must be applied "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Brown v.*

*Palmer*, 441 F.3d 347, 351 (6th Cir. 2006) (quoting *Jackson*, 443 U.S. at 324 n.16). "A reviewing court does not re-weigh the evidence or re-determine the credibility of the witnesses whose demeanor has been observed by the trial court." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (citing *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)). Accordingly, the "mere existence of sufficient evidence to convict . . . defeats a petitioner's claim." *Matthews*, 319 F.3d at 788–89.

Under Michigan law, the prosecution must prove every element of a charged offense beyond a reasonable doubt. This burden includes proving that the defendant is the person who committed the charged crime. *See, e.g.*, *People v. Oliphant*, 399 Mich. 472, 489 (1976); *People v. Kern*, 6 Mich. App. 406, 409 (1967). In other words, "proof of [the] defendant's connection with the alleged offense is an indispensable element of [the prosecutor's] duty." *Kern*, 6 Mich. App. at 409. Direct or circumstantial evidence and reasonable inferences arising from that evidence may constitute satisfactory proof of the elements of an offense, *People v. Nowack*, 462 Mich 392, 399–400 (2000); *People v. Jolly*, 442 Mich. 458, 466 (1993), including the identity of the perpetrator, *Dell v. Straub*, 194 F. Supp. 2d 629, 647 (E.D. Mich. 2002); *Kern*, 6 Mich. App. at 409; *see also People v. Johnson*, 146 Mich. App. 429, 434 (1985).

In this case, the Michigan Court of Appeals concluded that the prosecution presented sufficient evidence of identity to support Petitioner's convictions. The court explained:

> Defendant first argues that the evidence was insufficient to identify him as one of the assailants. The identity of the defendant is an essential element in every criminal prosecution. *People v. Oliphant*, 399 Mich. 472, 489, 250 N.W.2d 443 (1976). We review this claim de novo. *People v. Meshell*, 265 Mich. App. 616, 619, 696 N.W.2d 754 (2005). We examine the record to

determine whether a rational juror could have found that the prosecutor established defendant's identity beyond a reasonable doubt. *People v. Nowack*, 462 Mich. 392, 399-400, 614 N.W.2d 78 (2000). We consider the evidence in the light most favorable to the prosecution. *People v. Davis*, 241 Mich. App. 697, 700, 617 N.W.2d 381 (2000). The record reveals that there were some discrepancies between the descriptions of the assailants that the Williams' gave to the police after the incident and their trial testimony. To the police, Denard described the assailant with the assault rifle as being five feet, nine inches tall, and Denard signed the police report containing that description. In contrast, at trial, Denard acknowledged that defendant appeared to be about the same height as him, which is five feet, six inches. There was also some discrepancy regarding the degree to which defendant's face was obscured. Further, Officer Wassenaar testified that Sharon described the second assailant as having "craters" in his face, and she signed the police report with this description. At trial, Sharon testified that it was the first assailant who had the markings, not the man later identified as defendant.

The above discrepancies do not require reversal, however, as sufficient evidence of identity exists. Officer Wassenaar testified that when he took Sharon's statement on the night of the crime, she had clearly been victimized. She was visibly upset and very shaken as she tried to tell the officer what happened, and was "all over the place" in giving him a lot of information and jumping around a bit. Officer Wassenaar did his best to accurately document her descriptions. The officer testified that in his experience, people often become confused in giving descriptions to the police. Sharon testified at trial regarding her recollection of the assailants, taking issue with parts of Officer Wassenaar's written description of her statement, which she had admittedly signed. During Sharon's testimony the prosecutor had defendant display the back pocket of his jeans (he was purportedly wearing the same clothes at trial that he had on at the time of his arrest the night after the incident). Sharon testified that, although they were not Neyce jeans, the stitching was similar to the stitching she saw on the second assailant the night of the crime.

Denard's identification of defendant at the corporeal lineup and at trial was definitive. At the lineup, Denard singled out defendant, as described above, and told police, "he [defendant] was armed with a rifle. He was most aggressive out of the three. He pointed his gun at me, and my family. He did most of the talking. He was definitely the aggressor." Denard testified that he looked fully at defendant's face three times during the robbery. He acknowledged on cross-examination that his views of defendant's face lasted approximately 15 to 20 seconds, ten seconds, and eight seconds, respectively. Despite the brevity of his views of the assailant, Denard testified that he was confident in his identification of defendant:

> Q. ... For the record, was there any doubt in your mind that this defendant was one of those individuals in that line-up?
> A. I knew it was him.
> Q. Put it in your own words; do you know him?
> A. Just his face. I now had his face branded in my head. I wasn't going to forget. As soon as I walked in there I knew it was him.
> Q. ... Are you a hundred percent sure that this man right here is the man who held you up in your house?
> A. Yes, I am.
> Q. And any doubt in your mind, whatsoever, Mr. Williams?
> A. Ain't no doubt.
>
> The trial court instructed the jury concerning the dependability of identification testimony, advising the jury to consider "how good a chance the witness had to see the offender at the time" and "how long the witness was watching." The court further instructed the jury that they could consider "any times that the witness failed to identify the defendant, or made an identification or gave a description that did not agree with identification during trial." After receiving these instructions, the jury concluded that defendant was the perpetrator of the crimes.
>
> Given Denard's definitive identification of defendant at the lineup and trial, along with the other evidence presented, we conclude that a rational jury could have found that the prosecutor established defendant's identity beyond a reasonable doubt.

*People v. Bennett*, No. 284887, 2009 WL 3837172, *2–4 (Mich. Ct. App. Nov. 17, 2009).

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. The victims' testimony, if believed, provided sufficient evidence of Petitioner's identify and guilt at trial. A victim's testimony alone can be constitutionally sufficient to sustain a conviction. *See Tucker v. Palmer*, 541 F.3d 652, 658 (6th Cir. 2008) (citing cases). Petitioner essentially challenges the jury's credibility determination and the inferences the jury drew from the testimony at trial. However, it is the job of the fact-finder at trial, not a federal habeas court, to resolve evidentiary conflicts. *Jackson v. Virginia*, 443 U.S. 307, 326 (1979); *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002); *see also Walker v. Engle*, 703 F.2d 959,

11

969–70 (6th Cir. 1983) ("A federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."). The jury's verdict, and the Michigan Court of Appeals' decision affirming that verdict, were reasonable. The victims' testimony, if believed, provided sufficient evidence that Petitioner was one of the perpetrators of the crime. Habeas relief is not warranted on this claim.

### B. Sentencing Claims

Petitioner next asserts that he is entitled to habeas relief because his sentences are invalid under state and federal law. Petitioner alleges that his sentences constitute cruel and unusual punishment and that the trial court mis-scored Offense Variable 13 of the state sentencing guidelines.

The Michigan Court of Appeals denied relief on both of those claims, explaining as follows:

> Defendant next argues that his sentence constitutes cruel and unusual punishment. Given that defendant's sentence was within the sentencing guidelines, his argument is meritless. MCL 769.34(10); *People v. Kimble*, 470 Mich. 305, 310–311, 684 N.W.2d 669 (2004). A sentence that is within the guidelines range is presumed proportionate, *People v. Cotton*, 209 Mich. App. 82, 85, 530 N.W.2d 495 (1995), and a proportionate sentence does not violate the constitutional prohibition against cruel and unusual punishment, *People v. Colon*, 250 Mich. App. 59, 66, 644 N.W.2d 790 (2002). Similarly meritless is the argument in defendant's Standard 4 brief, in which defendant challenges the trial court's assessment of 25 points for offense variable (OV) 13. By statute, OV 13 requires the imposition of 25 points if the sentencing offense was "part of a pattern of felonious criminal activity involving 3 or more crimes against a person." MCL 777.43(1)(c). The statute mandates that "all crimes within a 5-year period, including the sentencing offense, shall be counted regardless of whether the offense resulted in a conviction." MCL 777.43(2)(a) (emphasis added). Concurrent convictions are included when calculating

> a defendant's score under OV 13. *People v. Harmon*, 248 Mich. App. 522, 532, 640 N.W.2d 314 (2001).
>
> Here, defendant's current convictions include three or more crimes against a person: felonious assault, home invasion, and armed robbery. MCL 777.16d, .16f, and .16y. In addition, defendant had a 2007 conviction for home invasion. These convictions plainly constitute more than three crimes against a person within a five-year period. The trial court was thus correct to score 25 points against defendant for OV 13.

*Bennett*, 2009 WL 3837172 at *4 (footnote omitted).

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. As an initial matter, the court notes that Petitioner's sentences are within the statutory maximums for his offenses and habitual offender status. *See* Mich. Comp. Laws §§ 750.529; 750.110a(2); 750.224f; 750.360; 750.82; 750.227b; 769.10. A sentence within the statutory limit is generally not subject to federal habeas review. *See Townsend v. Burke*, 334 U.S. 736, 741 (1948); *Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999). Claims which arise out of a state court's sentencing decision are not normally cognizable upon habeas review, unless the petitioner can show that the sentence imposed exceeded the statutory limits or is wholly unauthorized by law. *See Lucey v. Lavigne*, 185 F. Supp. 2d 741, 745 (E.D. Mich. 2001). Petitioner makes no such showing.

Petitioner claims that his sentences constitute cruel and unusual punishment under the state and federal constitutions. To the extent that he alleges that his sentences are disproportionate or unconstitutional under state law, however, he fails to state a claim for federal habeas relief. *See Austin v. Jackson*, 213 F.3d 298, 300 (6th Cir. 2000). Moreover, there is no federal constitutional right to individualized sentencing. *See United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995). Petitioner

is also not entitled to relief on his claim that his sentence constitutes cruel and unusual punishment under the Eighth Amendment. The United States Constitution does not require strict proportionality between a crime and its punishment. *See Harmelin v. Michigan*, 501 U.S. 957, 965 (1991). A sentence that falls within the maximum penalty authorized by statute "generally does not constitute 'cruel and unusual punishment.'" *Austin*, 213 F.3d at 302 (internal citation omitted). Petitioner's sentences are within the statutory maximums for his offenses, as well as the sentencing guidelines. The state trial court acted within its discretion in imposing Petitioner's sentences and there is no extreme disparity between his crimes and sentences so as to offend the Eighth Amendment.

Petitioner also asserts that the trial court erred in scoring Offense Variable 13 of the state sentencing guidelines. This scoring challenge is not cognizable on federal habeas review because it is a state law claim. *See Howard v. White*, 76 F. App'x 52, 53 (6th Cir. 2003) ("A state court's alleged misinterpretation of state sentencing guidelines and crediting statutes is a matter of state concern only."); *Austin*, 213 F.3d at 302; *see also Haskell v. Berghuis*, 695 F. Supp. 2d 574, 598 (E.D. Mich. 2010); *McPhail v. Renico*, 412 F. Supp. 2d 647, 656 (E.D. Mich. 2006). State courts are the final arbiters of state law and the federal courts will not intervene in such matters. *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Sanford v. Yukins*, 288 F.3d 855, 860 (6th Cir. 2002). Habeas relief does not lie for perceived errors of state law. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). Moreover, as explained by the Michigan Court of Appeals, the scoring of Offense

Variable 13 is supported by the record and state law. Petitioner has failed to establish a constitutional violation. Habeas relief is not warranted on these claims.

### C. Transcripts Claim

Lastly, Petitioner asserts that he is entitled to habeas relief because appellate counsel refused to give him access to the trial transcripts on direct appeal so that he could file a *pro per* supplemental brief. Petitioner claims a violation of his due process and equal protection rights under the state and federal constitutions.

> The Michigan Court of Appeals denied relief on this claim, stating:
>
> Lastly, defendant argues that his constitutional rights were violated when his appellate counsel refused to give him access to the trial transcripts. We disagree.
>
> To preserve equal justice, an indigent defendant is entitled to obtain a copy of trial transcripts without cost in order to pursue appeal of a conviction. *Griffin v. Illinois*, 351 U.S. 12, 18-19, 76 S. Ct. 585, 100 L. Ed. 891 (1956); MCR 6.433. Here, defendant acknowledges that his appointed appellate counsel has received the trial transcripts. Defendant contends, however, that his counsel has refused to give him access to the transcripts, which impedes his right to file a Standard 4 brief. In support, defendant has attached to his brief an unauthenticated copy of a letter in which his appellate counsel informs defendant as follows:
>
>> You have . . . requested that the transcribed record of your case be sent to you so that you could prepare your own in pro per supplemental pleading. Unfortunately I am unable to honor your request as I must maintain the transcript until my work on your behalf before the Michigan Court of Appeals is completed. That will occur after the Court hears oral arguments in your case.
>>
>> Enclosed please find a copy of the opinion issued by the Michigan Supreme Court in *Larkin v. Kent Circuit Judge*, 397 Mich. 611, 246 N.W.2d 827[;] 397 Mich. 611, 246 N.W.2d 827 (1976). [FN6] The court held that when an indigent defendant is represented by counsel on appeal he is entitled to receive his transcript only after his appeal of right has been concluded.
>
> FN6. The issue in *Larkin* pertained to the proper interpretation of GCR 1963, 785.13, which was essentially the 1974 precursor to MCR 6.433, governing

the right of indigent defendants to obtain copies of documents and transcripts for postconviction proceedings. In *Larkin*, two defendants, who were represented by appointed counsel, were seeking copies of their transcripts from the court. *Larkin, supra* at 612-613, 246 N.W.2d 827. Our Supreme Court held that the language of GCR 1963, 785.13 should be interpreted to mean that a defendant is entitled to copies of the transcript and other documents to facilitate his or her pursuit of post-conviction remedies: "(1) if he is represented by counsel on appeal, only after his appeal of right has been concluded; or (2) upon failure to exercise his appeal of right or right to assigned counsel." *Id.* at 613, 246 N.W.2d 827.

We find no published Michigan opinion that considers whether an indigent defendant has a right to access trial transcripts that are in the possession of his or her appointed appellate counsel. The interplay of two relevant court rules, however, is helpful to our analysis. MCR 6.425(G), which addresses the appointment of appellate counsel, requires trial courts to direct the preparation of the trial and sentencing transcripts at the time of appointment. MCR 6.425(G)(2). The rule provides that "[i]f the appointed lawyer timely requests additional transcripts, the trial court shall order such transcripts within 14 days after receiving the request." *Id.* The transcript is provided to appellate counsel to facilitate his or her pursuance of an appeal on the defendant's behalf. MCR 6.433, relating to postconviction proceedings, requires trial courts to order preparation of a transcript if an indigent defendant so requests, "unless the transcript has already been ordered as provided in MCR 6.425(G)(2)." MCR 6.433(A). Taken together, these two rules indicate that once a transcript has been provided to appellate counsel, the defendant is not entitled to additional copies of the transcript. With respect to a defendant's right to access the transcript that is in the possession of his or her appointed counsel, the court rules are silent.

Notwithstanding, defendant argues that he was denied equal protection and due process of law by his appellate counsel's failure to give him access to the trial transcripts, thus impeding his ability to prepare and file a Standard 4 brief. We disagree. The right to file a Standard 4 brief is an administrative creation, Administrative Order No.2004-6, not a constitutional right. A defendant has either a constitutional right to counsel or to proceed in propria persona, but not both. *People v. Adkins,* 452 Mich. 702, 720, 551 N.W.2d 108 (1996), *overruled in part on other grounds by People v. Williams*, 470 Mich. 634, 683 N.W.2d 597 (2004); *People v. Dennany*, 445 Mich. 412, 442, 519 N.W.2d 128 (1994).

Administrative Order No.2004-6, Standard 4, provides in pertinent part:

When a defendant insists that a particular claim or claims be raised on appeal against the advice of counsel, counsel shall inform the defendant of the right to present the claim or claims in propria persona. Defendant's filing

16

shall consist of one brief filed with or without an appropriate accompanying motion. Counsel shall also provide such procedural advice and clerical assistance as may be required to conform the defendant's filing for acceptability to the court.

Although the phrase "clerical assistance" as set forth in Administrative Order No.2004-6 may imply allowing the defendant access to his or her transcript, the preamble of the order specifically states: "Criminal appellants are not constitutionally entitled to counsel's adherence to these guidelines." Although the better practice may be to allow defendants access to versions (electronic or otherwise) of the transcripts, there is no authority indicating that lack of access to the transcripts is a violation of a constitutional right in a situation where the defendant is represented by appointed counsel. FN7 In this case, defendant is represented by appointed appellate counsel, *Adkins, supra*; *Dennany, supra*, and his counsel has obtained a free copy of the trial transcripts, *Griffin, supra*. There is no constitutional requirement that defendant be given access to the transcripts to prepare and file a Standard 4 brief. Therefore, we hold that in this instance, defendant's constitutional rights were not violated.

FN7. Administrative Order No.2004-6, Standard 8 implies that defense counsel may retain the records and information until his or her representation terminates, at which time he or she is required to "cooperate promptly and fully with the defendant and any successor counsel in the transmission of records and information." This standard does not, however, address a defendant's right to access the records and information during the appeal.

*Bennett*, 2009 WL 3837172 at *4–5.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application thereof. First, to the extent that Petitioner asserts a violation of his rights under Michigan law, he is not entitled to habeas relief. As noted, a federal habeas court is limited to deciding whether a state court conviction violates the Constitution, laws, or treaties of the United States, and federal habeas relief is not available for perceived state law violations. *See Estelle*, 502 U.S. at 67–68; *see also Bradshaw*, 546 U.S. at 76; *Lewis*, 497 U.S. at 780.

Petitioner is also not entitled to relief on the federal portion of this claim. The Untied States Supreme Court has ruled that a defendant has no constitutional right to represent himself on appeal. *Martinez v. Court of Appeal of Cal.*, 528 U.S. 152, 163 (2000). Consequently, a defendant has no "constitutional entitlement to submit a *pro se* appellate brief on direct appeal in addition to the brief submitted by appointed counsel." *McMeans v. Brigano*, 228 F.3d 674, 684 (6th Cir. 2000); *see also Myers v. Johnson*, 76 F.3d 1330, 1335 (5th Cir. 1995) (noting that a criminal defendant has no constitutional right to hybrid representation on appeal, and when defendant accepts assistance of counsel, but later objects to his attorney's appeal strategy or brief, the defendant cannot then expect to be allowed to file supplemental *pro se* briefs on direct appeal).

In this case, Petitioner was represented by counsel on direct appeal. He thus had no constitutional right to submit a supplemental brief and no constitutional right to a personal copy of the transcript in order to do so. *See Hooks v. Roberts*, 480 F.2d 1196, 1198 (5th Cir. 1973); *Gay v. Watkins*, 579 F. Supp. 1019, 1021 (E.D. Pa. 1984). He also had no constitutional right to defense counsel's copy of the transcript, *Morin v. United States*, 522 F.2d 8, 9 (4th Cir. 1975), "'to comb the record in the hope of discovering some flaw.'" *United States v. Ilodi*, 982 F. Supp. 1046, 1048–49 (D. Md. 1997) (quoting *United States v. Glass*, 317 F.2d 200, 202 (4th Cir. 1963)). Petitioner has failed to establish a violation of his federal constitutional rights as to this issue. Habeas relief is not warranted on this claim.

### D. Certificate of Appealability

Before Petitioner may appeal this decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court denies relief on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484–85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the court must limit its examination to a threshold inquiry into the underlying merit of the claims. *Id.* at 336–37. Having undertaken the requisite review, the court concludes that Petitioner has not made a substantial showing of the denial of a constitutional right as to his claims.

### IV. CONCLUSION

Accordingly, IT IS ORDERED that the petition for a writ of habeas corpus [Dkt. # 1] is DENIED.

IT IS FURTHERED ORDERED that a certificate of appealability is DENIED.

    s/Robert H. Cleland
    ROBERT H. CLELAND
    UNITED STATES DISTRICT JUDGE

Dated: October 30, 2012

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, October 30, 2012, by electronic and/or ordinary mail.

                                                    s/Lisa Wagner
                                                    Case Manager and Deputy Clerk
                                                    (313) 234-5522